## YOUNGBLOOD v. LATHEN.

1. Certain lands of a bankrupt were excepted from the sale of his property by order of the United States District Court, but no formal assignment of such land as a homestead to the bankrupt was made by the United States Court, or by any State court, or ever filed for record with the clerk of court. Afterwards, the bankrupt sold a part of this land and then died intestate. *Held*, that the purchaser was entitled to this land, and that it could not be claimed by the widow of the bankrupt as a part of the homestead, nor by his heirs for partition.

2. The United States Court in bankruptcy does not assign a homestead, but only excepts from sale and conveyance such property as is exempt under the State law, leaving the title of such excepted property in the bankrupt, which he may afterwards sell if he pleases.

Before KERSHAW, J., Lancaster, February, 1883.

Action for partition by Mary J. Youngblood against Nancy Lathen, John F. Lathen, Harriet M. McMillan, Elizabeth A. Robinson and Sarah A. Robinson, commenced in 1882. The opinion states the case.

The Circuit decree was as follows:

The constitution of this State (Art. I., § 20,) declares that "a reasonable amount of property shall be exempted from seizure and sale for the payment of any debts or liabilities, except for the payment of such obligations as are provided for in this constitution." Article II., section 32, declares "that the family homestead of each family residing in this State * * * shall be exempt from attachment, levy or sale on any mesne or final process issued from any court," &c. The revised statutes of the United States, section 5045, re-enacting former acts, provides that "in no case shall the property hereby excepted pass to the assignee or the title of the bankrupt thereto be impaired or affected by any of the provisions of this title," &c. Among the exceptions referred to is the following: * * * "Such other property, not included in the foregoing exceptions, as is exempt from levy and sale, upon execution or other process, or order of any court by

the laws of the State in which the bankrupt has his domicile at the time of the commencement of the proceedings in bankruptcy, to an amount allowed by the constitution and laws of each State as existing in the year 1871," &c.

It is contended, that if the estate of the bankrupt remained as declared in the section quoted, unimpaired or unaffected by the provisions of the bankrupt law, then he simply held his land by the former title, free from the debts provable against him in bankruptcy. In other words, that he had such title as he would have had if there had been no proceedings in bankruptcy and he was clear of debt. But this reasoning is certainly fallacious. The thing excepted in bankruptcy is that which is exempted by the constitution and laws of the State from liability to process for the collection of debts, to wit, the family homestead. The bankrupt court, having assumed jurisdiction, superseded the process of the State courts and settled the debts of the bankrupt and allowed him the same benefits which he would have been entitled to if the property had been subjected to the process of the State courts. In order to do this the homestead has been judicially ascertained and allotted to the bankrupt. It then acquired the specific character impressed upon a homestead by the State laws after assignment.

If that were not the case, then the exempted property never could have acquired that character, because, the debts being discharged in bankruptcy, there would be no proceedings in the State courts to enforce said debts, and consequently no proceedings to assign a homestead. The estate of homestead has been said to be not a new estate, nevertheless after its assignment it acquires certain new characteristics or incidents which largely qualify it. Among them is that it shall be the family homestead; which, though vested in the head of the family, is in him as the representative of the family; the family being the object of the protection afforded by the constitution in this respect. The subject of protection is the family, the head of the family being referred to as its representative. *In re Kennedy,* 2 *S. C.* 227 ; *Howze* v. *Howze, Id.* 229 ; *Ex parte Strobel, Id.* 311. The widow and children of the debtor, and even the widow without children, is entitled to this protection. 3 *S. C.* 227. The head of a family

is but a trustee and the family the beneficiaries. *Moore* v. *Parker*, 13 *S. C.* 490.

Such being the nature of the estate, as affected by the constitution and laws concerning the homestead exemption, it follows that from the time it acquired that character by the assignment of a court having jurisdiction, it became inalienable by the head of the family, at least so far as its alienation could affect the interests of the members of the family who are the beneficiaries of the trust. The widow, if she survive the children, in this case would be the sole beneficiary, and hence the children are not entitled to partition until her death. This would have been the result even in the absence of the statutory inhibitions of alienation. A reference to these will also lead to the same conclusion. 15 *Stat.* 371, §§ 4 and 5; *Gen Stat.*, § 1997. The act of March 13th, 1872, prescribing the mode in which the homestead may be sold by the head of the family, preserving at the same time the interests of the family, very strongly sustains the view here taken. 15 *Stat.* 229.

It follows, from what has been said, that the attempted alienation is void, and that plaintiff is not entitled to partition of the said lands. It is adjudged and decreed that the complaint be dismissed, and that plaintiff, Mary J. Youngblood, and defendant John F. Lathen, pay the costs in equal shares, to be adjusted by the clerk and entered in the judgment.

*Mr. M. J. Hough*, for appellant.

*Mr. R. E. Allison*, contra.

February 18th, 1884. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This was an action for partition of lands among the heirs of the intestate, C. H. Lathen, under the following circumstances : The intestate, C. H. Lathen, seized and possessed of two small tracts of land—one containing 140, and the other 130 acres—went into bankruptcy in the United States Court in 1873, and was there adjudged a bankrupt and discharged in 1874. Under some claim that, under the laws of

South Carolina, he was entitled to homestead in the tracts of land above described, the United States Court declined to have them sold for the payment of debts; but it seems that no actual assignment of homestead was ever made by the United States or State court, or returned for record in the clerk's office of Lancaster, as required by law. All that appears is a certificate made for use in the bankrupt court as follows:

" The real estate to be set apart to C. H. Lathen as his exempted property, under the provisions of the homestead laws of South Carolina, lying in Lancaster, on which petitioner resides, containing 305 acres more or less, we have appraised and returned at $950.

(Signed)    " JOHN J. GRAHAM,
" JAMES CROCKETT,
" DAVID M. CROCKETT,
"*Appraisers.*"

Matters stood in this imperfect condition until July, 1878, when the intestate, C. H. Lathen, conveyed the smaller tract (130 acres) to his son, John F. Lathen, who was put into possession, and still retains it under his father's deed. In November, 1878, C. H. Lathen, the father, died intestate, leaving a widow, Nancy, one son, John F. Lathen, and several daughters, viz., Mary J. Youngblood, Harriet M. McMillan, and others. All the children are of full age, and have married and left their parents. At the death of her husband, the widow, Nancy, was left alone on the 140-acre tract, of which she still retains the possession.

Mrs. Youngblood, one of the daughters, commenced this action for partition of both the tracts of land, claiming that, upon the death of her father, C. H. Lathen, both tracts descended to his heirs-at-law, and are subject to partition among them. The widow, Nancy, claimed that both tracts had been set apart for the homestead of her husband in his life-time by the bankrupt court, and that now being the head of the family she was entitled to retain them during her life as such homestead. John F. Lathen claimed that, while it was true that the United States Court refrained from selling the lands as the property of his father on the ground that they might be assigned as his homestead under the law of the State, yet such homestead was never

actually assigned, and his father still had the right to convey the land, and his deed gave good title to the tract conveyed to him.

The cause was heard by Judge Kershaw, who held that the refusal of the United States Court to have the lands sold in bankruptcy was substantially an assignment of homestead to the debtor, "judicially ascertained and allotted to the bankrupt;" that from that time C. H. Lathen, as the head of the family, became a trustee for his wife and children, the beneficiaries under the homestead; that, therefore, he had no right to sell any of his land, and his deed to John F. Lathen was null and void. He held that the widow was entitled to both tracts as homestead during her life, and dismissed the complaint for partition, ordering John F. Lathen to pay half of the costs.

The defendant John F. Lathen appeals to this court upon the following grounds: "1. Because his Honor erred in holding that the alienation of C. H. Lathen in his life-time to appellant, July 19th, 1878, is void. 2. Because, although the land conveyed by C. H. Lathen to appellant may have been a part of the land allowed him as a bankrupt by the United States Court in bankruptcy, still he had a right to convey it, and his Honor should have so held. 3. Because his Honor erred in holding that Nancy Lathen was entitled to homestead as against appellant in that portion of the land conveyed by C. H. Lathen to appellant. 4. Because his Honor refused to decree specifically whether the deed of J. F. Lathen was valid, or what part, if any, of the land Nancy was entitled to as homestead. 5. Because his Honor ordered that John F. Lathen should pay half the costs."

It will not be necessary in this case to consider what powers belong to the head of a family in respect to disposing of his property which has already been regularly assigned and set apart as a homestead. The general right to homestead under the constitution and law, and the having it actually laid off and assigned by the machinery for that purpose, are very different things. In a general sense, every insolvent debtor, who is the head of a family, may be said, in a proper case, to be entitled to homestead; but the law of the State has directed certain things to be done in order to locate the right and give it practical vitality;

and we suppose that the shield which the homestead affords can be secured only by a compliance with these requirements. It has been held that even the assignment does not protect the property; but in order to have that effect it must be made a record of court as prescribed. *Ryan* v. *Pettigrew*, 7 *S. C.* 146; *Choice* v. *Charles, Ibid.* 171; *Bull* v. *Rowe*, 13 *S. C.* 355. The right to homestead is not a new estate taken from one man and given to another, but simply a negation of the ordinary rights of the creditor as to certain property for certain purposes—an "exemption" dealing only with the process for enforcing the contract, "but leaving the title to the property untouched."

Without now going into the question, whether the head of a family has the absolute right to dispose of property which has been regularly set apart as his homestead, it is very certain that at any time before such assignment (notwithstanding the existence of the general undefined right), the owner of the land may alien or mortgage it so as to defeat the right to homestead either on his own part or that of his family. *Homestead Association* v. *Enslow*, 7 *S. C.* 1; *Rosenberg* v. *Lewi, Id.* 344; *Smith* v. *Mallone*, 10 *S. C.* 39. It does not seem to us that these lands were regularly assigned as homestead to C. H. Lathen in his life-time. It is not even claimed that they were so assigned, according to the particular requirements of the South Carolina law, or that such assignment was ever returned for record in court, as required by that law. It is, however, suggested that when Lathen, the intestate, filed his petition for bankruptcy in the United States Court, that court assumed jurisdiction of the subject, and thereby "superseded the process of the State court, and in settling the debts of the bankrupt, allowed him the same benefit he would have been entitled to if the property had been subjected to the process of the State courts." In other words, that the refusal of the bankrupt court to include these lands in the conveyance to the assignee in bankruptcy and to have them sold in payment of the debts of the bankrupt, must be regarded as equivalent to an actual, formal assignment of homestead therein.

We do not so understand the bankrupt proceedings. It is true the bankrupt court, when informed by certificate that the lands did not exceed $1,000 in value, which the petitioner might

have assigned to him as homestead, declined to have them sold for the payment of his debts; but, as we understand, this did not amount to an actual assignment of homestead. It was merely "excepting" from sale lands which the bankrupt might have assigned to him as homestead under the South Carolina law, by which State law alone the assignment must be regulated, not only in the mere formal mode and manner of making it, "but its vitality as an existing right must depend on its conformity with all the requirements therein prescribed.   \*   \*   \* It would thus appear that not even the parties to the process, through which the assignment is to be made, are bound by any action under it until it is returned for record in court," &c. *Choice* v. *Charles, supra.*

It seems to us that this view is indicated by the terms of the appraisement (the only paper on the subject before us) made for the information of the bankrupt court, which, in appraising the lands, speaks of them as "to be set apart to C. H. Lathen as his exempted property under the provision of the homestead laws of South Carolina," and also to be in conformity with the law of the United States upon the subject of State exemptions. Section 5045 of the U. S. Revised Statutes provides as follows : "There shall be excepted from the operation of the conveyance (from the bankrupt to the assignee in bankruptcy) the necessary household and kitchen furniture, &c.,   \*   \*   \*   and such other property not included in the foregoing exceptions as is exempted from levy and sale upon execution or other process or order of any court by the laws of the State in which the bankrupt has his domicile at the time of the commencement of the proceedings in bankruptcy, to an amount allowed by the constitution and laws of such State as existing in the year 1871," &c.

It seems to us that this provision does not mean that the court shall undertake to go in detail through the whole process of assigning homestead according to the requirements of the statutes of the State, but only directs that so much property as is liable to be assigned as homestead under the State law, shall be omitted—left untouched—" excepted " from the conveyance of the property to be administered in bankruptcy, leaving such " excepted " property entirely under the State law as to the

·details of assignment. This construction is shown by another part of the same section of the bankrupt act of March, 1867, which goes on to declare that "these exceptions shall operate as a limitation upon the conveyance of the property by the bankrupt to his assignee; and in no case shall the property hereby ·excepted, pass to the assignee, or the title of the bankrupt thereto be impaired or affected by any of the provisions of the title," &c.

We think it was error in the Circuit Court to hold that C. H. Lathen, in his life-time, had not the right to convey one of his tracts of land to his son, John F. In our view he had that right, and the land so conveyed was not subject, either to the widow, as part of her homestead, or to the heirs, for partition. This ruling makes it proper to relieve John F. Lathen from half the costs imposed upon him. As to the widow, Nancy, the Circuit Court held that she was entitled to homestead in the tract still in her possession, and that part of the judgment, not being appealed from, is not before us and we make no ruling upon the subject.

The judgment of this court is that, subject to the modifications herein indicated, the judgment of the Circuit Court be affirmed.